1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8   DANIEL MARCUS HARRIS,

9              Petitioner,              No. 2:05-cv-0242-GEB-JFM (HC)

10        vs.

11   DARREL ADAMS, Warden, et al.,

12             Respondents.             <u>FINDINGS AND RECOMMENDATIONS</u>

13   _____/

14          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

15   corpus pursuant to 28 U.S.C. § 2254.  Petitioner is serving a sentence of thirty-five years to life in

16   prison following his 2002 conviction on charges of lewd and lascivious acts with a minor under the age

17   of fourteen in violation of California Penal Code § 288(a) with enhancements for two prior serious

18   felony convictions and two prior strike convictions.

19          Petitioner raises four claims in his petition.  First, he claims that his rights under the Sixth

20   and Fourteenth Amendments were violated by the trial court's denial of a motion brought by petitioner

21   and his trial counsel pursuant to <u>People v. Marsden</u>, 2 Cal.3d 118 (1970) to relieve petitioner's counsel

22   from representing petitioner.  Second, petitioner claims that his Sixth Amendment rights were violated

23   by the trial court's denial of petitioner's motion for a new trial made on grounds of ineffective assistance

24   of counsel.  Third, petitioner claims that his Sixth and Fourteenth Amendment rights were violated by

25   the admission of irrelevant character evidence and by trial counsel's failure to object to the admission of

26   such evidence.  Finally, petitioner claims that his Fourteenth Amendment right to a fair trial was violated

1

1   when the trial court gave an improper jury instruction on adoptive admissions.

2                                    FACTS[1]

3           Victim's father molested her about age three, and her mother and
    stepfather, [petitioner], used methamphetamines, which forced her into
4   the role of caregiver for her half-siblings.  The People's theory was that
    [petitioner], a selfish drug abuser, knew she had been "groomed" by
5   her father as a sex object and availed himself of that training.  The
    defense theory was that once [petitioner] got off drugs and began to
6   assert control over the family, victim lied to get him out of the house;
    after all, she had been in counseling for years and had never previously
7   disclosed the alleged molestations by [petitioner].

8           Victim, age 18 at trial, is Vicki's daughter and [petitioner] is her
    stepfather.  He and Vicki have two children, a boy and a girl, 14 and
9   15 years old at time of trial (hereafter referred to as brother/sister).

10          Victim was molested about age three by her father, Johnny Lee
    Webb.  He was convicted on her testimony, and we upheld the
11  conviction in an unpublished opinion.  (*People v. Webb* (Jan 11, 1989)
    3 Crim. No. C003648.

12
            When victim was about six or seven, [petitioner] touched her
13  breasts and vagina in a bedroom.  When she was about seven or eight,
    he put his penis in her mouth and ejaculated; she cried but he told her
14  loved her.  Another time, he tried to sodomize her, and apologized for
    hurting her.  When she was about 13, about a dozen incidents took
15  place during the period charged in the information.  Usually he put his
    penis in her mouth but sometimes he touched her breasts and vagina, or
16  put his mouth on her vagina, or rubbed his penis on her vagina.

17          In September 1999, sister and victim used LSD at a party and sister
    got drunk on vodka.  When [petitioner] learned what had happened he
18  blamed victim for not taking care of her younger sister, they had a fight
    and victim stayed at a friend's house overnight.  She returned home,
19  planning to tell her mother what [petitioner] had done in the past, but
    because he was there, she stayed in her room and cried all day.
20  Eventually she told her sister and mother, then her counselor, who told
    the police.
21          Under Evidence Code section 1108, a friend testified she was a
    neighbor and one of victim's friends in the past, and once when she was
22  about eight or nine she stayed over at victim's house.  She woke up to
    find [petitioner] with his fingers in her vagina.  About one year later the
23  friend told sister that [petitioner] had touched her, but gave no details.
    When victim's mother asked [petitioner] about it, he vigorously denied

24

25          [1]  The statement of facts is taken from the opinion of the California Court of Appeal for the
    Third Appellate District in People v. Harris, No. C041008 (Apr. 30, 2004), a copy of which was
26  lodged by respondents on May 31, 2005 as Document 3.

                                        2

touching the friend inappropriately and asked to speak to the friend's mother; later he explained that he had been confused when drunk. The friend's mother accepted that the incident was a mistake caused by [petitioner]'s drunken belief that her daughter was actually Vicki; because her husband sold drugs to [petitioner] and did not want to lose a customer she thought "it was, you know, no big thing."

[Petitioner] told Vicki that he had "French-kissed" victim and thought about molesting her because she had already been molested. He thought God put victim into his life to molest, but after he kissed her he wanted to protect her. At one point [petitioner] said he wanted to watch Vicki have sex with someone else and wanted to have sex with a virgin. Vicki found pictures [petitioner] drew of a woman having sex with a dog, and he said he had seen this happen and drew the pictures for self-therapy.

[Petitioner] testified that he never touched the friend, never told Vicki he wanted to have sex with a virgin nor did he make comments about wanting to molest victim and he did not molest her. He admitted prior heavy use of drugs and two theft-related felony convictions. He testified he never kissed victim in any way, although he admitted that a father would normally kiss a daughter. He admitted drawing pictures of a woman having sex with a dog. He had seen such an event, it had bothered him, and he had made the drawings to help him get over the incident.

People v. Harris, slip op. at 2-4.

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a

3

1  decision of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S.

2  3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

3        Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

4  court may grant the writ if the state court identifies the correct governing legal principle from the

5  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.

6  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court

7  concludes in its independent judgment that the relevant state-court decision applied clearly established

8  federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412;

9  see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a

10  federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

11  the state court was 'erroneous.'")        The court looks to the last reasoned state court

12  decision as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

13  Where the state court reaches a decision on the merits but provides no reasoning to support its

14  conclusion, a federal

15  habeas court independently reviews the record to determine whether habeas corpus relief is available

16  under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17  II.  Petitioner's Claims

18        A.  Denial of Marsden Motion

19        Petitioner's first claim is that the trial court erred in denying a motion for new counsel

20  pursuant to People v. Marsden, 2 Cal.3d 118 (1970).  The last reasoned rejection of this claim is the

21  decision of the California Court of Appeal for the Third Appellate District on

22  /////

23  petitioner's direct appeal.  See Lodged Documents 3 and 4.  The state court of appeal set forth the

24  facts relevant to this claim, as follows:

25        Some procedural detail informs our analysis of [petitioner]'s *Marsden*
      complaints.

26

4

## A. Background

A complaint charging continuous sexual abuse against victim (Pen. Code, § 288.5) and lewd conduct (*id*., § 288, subd. (a)) against the friend was filed on September 17, 1999.  The kidnapping prior was charged as a strike and as a serious felony.  Counsel was appointed that day.  [Petitioner] entered a not guilty plea four days later, and the preliminary hearing was set for October 5, 1999.

On that day the prosecutor proposed to file an amended complaint adding a strike and defense counsel withdrew a time waiver.  An amended complaint was filed on October 19, 1999, which added the federal bank robbery conviction as a strike and a serious felony. [Petitioner] waived preliminary hearing on this complaint.

An information was filed on October 25, 1999, in conformity with the *original* complaint, i.e., only charging one strike.  On November 2, 1999, [petitioner] pleaded not guilty and trial was set for December 15, 1999.  An amendment adding the other strike was permitting on December 14, 1999.  Trial was reset for March 8, 2000.  (Later the information was again amended, and when defense counsel pressed a demurrer, the People dropped the charges regarding the friend and the final information charged a single count of lewd conduct against the victim, and the priors.)

On February 29, 2000, defense counsel moved for additional pretrial discovery, including more information on the victims and their counselors.  Counsel alleged victim had received psychological treatment since age five, but had not disclosed the continuous molestations by [petitioner] to her counselors until the age of 16.  The victims knew each other and were involved with the criminality, including drugs and alcohol, and [petitioner] wanted more information.

Trial was reset to May 17, 2000, and [petitioner] waived his speedy trial rights.  The discovery motion was repeatedly delayed, sometimes by the People, because of juvenile court hearings, and the trial date was vacated.  [Petitioner] continued to waive time.

On June 20, 2000, [petitioner] made a *Marsden* motion, and the hearing took place two days later.

At the June 22, 2000 *Marsden* hearing [petitioner] complained about delay, point out "I am farther away today going to trial than I was the very day I was arrested.  At least then I was faced with a 90 day period of time, if I went to trial.  Now I am facing up to four more months."  He also complained about discovery information on a defective computer disk, and that the prior month counsel said he needed to review juvenile files, but had not yet done so.  [Petitioner] complained about the investigator's efforts.  He had complained to the bar and planned a civil suit seeking "damages I have incurred because of his actions, or inactions."

Trial counsel replied that he, too, was dismayed by the delays, but stated he had discussed each one with [petitioner] and therefore "I was totally surprised . . . when Mr. Harris asked for a *Marsden* hearing." The information on the bad disk was not vital, in the sense of irretrievable, but it would cause a delay to reconstruct it:  It was transcripts of videotapes of interviews with the prosecution witnesses, which the defense expert needed for his review.  Another cause for delay was the unusual circumstance of the district attorney having enough doubts about the case to authorize a neutral polygraph examination with the understanding that the results might persuade him to drop the case.  Unfortunately, the agreed examiner, a retired Department of Justice expert respected by defense attorneys and law enforcement alike, had to delay the test because of an unexpected family emergency.  The defense had contacted most of the witnesses identified by [petitioner], except counselors who could not legally be subpoenaed before trial, and some of the people contacted refused to talk or had not provided the hoped-for information.  Another reason for delay was an early trial would result in reassignment of the case to a less sympathetic prosecutor.

[Petitioner] then claimed counsel had destroyed evidence relevant to bail, which counsel denied, and that counsel had given information which led to a probation hold.

The court denied the motion and advised [petitioner] that he could withdraw his time waiver.

The matter was reopened after counsel spoke with [petitioner] and counsel stated his belief "in view of his suspicions and allegations about me, that our relationship is such that we should not proceed in this role. I think Mr. Harris has just become very bitter and suspicious, and it is down to the point that he simply does not like me at this point." Counsel felt the fact [petitioner] had complained to the bar "and is contemplating a civil lawsuit" created a conflict.  The court explained that good cause had not been shown to relieve counsel, and there was no irremediable breakdown of the relationship.  Counsel said he would continue to do his best, "but maybe I haven't articulated.  The last several minutes in private with Mr. Harris has been wasted on allegations and baseless charges and suspicious, it is just a very untenable situation.  I think the relationship has broken down.  [¶]  If the Court orders it, I will continue to try, but it is not going to be easy." The court asked if [petitioner] had anything to add; he did not.  The court denied the motion.

People v. Harris, slip op. at 4-8.[2]

---

[2]  In its opinion, the state court of appeal noted that "there was another sealed *Marsden* hearing on September 6, 2000.  Trial counsel explained that [petitioner] wanted to make a record for appeal and that they had had an "animated" discussion "which was not under the best circumstances" in the jail recently.  [Petitioner] then complained about tactical evidentiary issues but not about any communication problems with counsel."  People v. Harris, slip op. at 8.  The claim before this court involves only the June 22, 2000 Marsden motion and hearing thereon.  Petitioner's claim does not include any reference to the September 6, 2000 hearing, and the transcript of that hearing is not part of

1    The state court of appeal rejected petitioner's claim, finding that the trial court had

2  "conducted a full-blown in camera hearing to give [petitioner] a forum for his complaints" and that the

3  court had not abused its discretion in denying the motion after the hearing. Id. at 9.  The court found

4  that petitioner had not shown "that the evidence at the hearing demonstrated an irreconcilable conflict

5  with counsel such that incompetent representation would likely result." Id. at 9.  Specifically, the court

6  found that "[t]he disputes between [petitioner] and trial counsel involved tactical issues such as the

7  timing of trial and the course of the investigation" and that "[t]rial counsel's testimony established

8  rational, tactical reasons for the delay of trial and explained how the investigation was proceedings." Id.

9  at 9-10.

10   The court also rejected petitioner's contention that the motion should have been granted

11  because he had complained to the State Bar and planned to sue his lawyer, and that trial counsel had

12  ultimately joined in the request to be relieved, claiming petitioner "did not trust him." Id. at 10.  The

13  court had three reasons for this part of its decision:

14   First, the fact [petitioner] complained about and threatened to sue
     counsel did not entitle him to new counsel, otherwise any defendant
15   could manipulate the system; the suit merely raised the possibility of a
     conflict, not an actual conflict.  (*People v. Horton* (1995) 11 Cal.4th
16   1068, 1106; *People v. Hardy* (1992) 2 Cal.4th 86, 135-138.)

17   Second, the fact [petitioner] was suspicious of, lacked confidence in
     or did not get along with counsel did not entitle him to new counsel.
18   (*People v. Barnett* (1998) 17 Cal.4th 1044, 1092 ["Although
     defendant's frustration with counsel was clearly evidence, the record
19   reflects substantial investigative efforts by [counsel] and his anticipated
     readiness to process"];  [additional citation omitted.]
20
     Third, the fact counsel ultimately joined in the request did not
21   compel the trial court to grant the motion.  Although relevant, it was not
     dispositive.  Otherwise, trial counsel could always delay a trial or get rid
22   of a difficult client by agreeing they could not work together.  Trial
     counsel offered no specific facts showing that he could not
23   communicate with [petitioner] as necessary to prepare for and conduct
     the trial.  He agreed that "If the Court orders it, I will continue to try,
24   but it is not going to be easy."  Counsel did not assert that the matter
     was hopeless.
25
   ─────────────────────
26  the record before this court.

7

1 | People v. Harris, slip op. at 10-11.

2 |     "[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the

3 | adversarial process, not on the accused's relationship with his lawyer as such.'" Wheat v. United

4 | States, 486 U.S. 153, 159 (1988) (quoting United States v. Cronic, 466 U.S. 648, 657 n.21 (1984)).

5 | "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal

6 | defendant." Wheat, at 159.  In considering whether habeas relief should issue based on the denial of a

7 | Marsden motion, the court looks at whether petitioner's conflict with his attorney deprived him "of the

8 | representation to which he was entitled by the Sixth Amendment." Schell v. Witek, 218 F.3d 1017,

9 | 1027 (9th Cir. 2000). The court considers "a number of factors, including the timeliness of the motion,

10 | the adequacy of the court's inquiry into the [petitioner]'s complaint, and whether the conflict between

11 | the [petitioner] and his counsel was so great that it resulted in a total lack of communication preventing

12 | an adequate defense." Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982).  Citing the holding in

13 | Morris v. Slappy, 461 U.S. 1, 13-14 (1983), "that there is no Sixth Amendment right to 'a "meaningful

14 | relationship" between and accused and his counsel,'" the United States Supreme Court for the Ninth

15 | Circuit has noted that it is unaware of any decision by the United States Supreme Court "that stands for

16 | the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free

17 | of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or

18 | /////

19 | distrust" and that Morris "is to the contrary." Plumlee v. Masto, 512 F.3d 1204, 1210-11 (9th Cir.

20 | 2008).

21 |     After review of the record, this court finds the state appellate court's findings to be fully

22 | supported by the record and its denial of this claim congruent with applicable principles of federal law.

23 | Petitioner's first claim for relief should be denied.

24 |     B.  Denial of Motion for New Trial

25 |     Petitioner's second claim is that the trial court violated his rights under the Sixth

26 | Amendment by denying petitioner's motion for a new trial, which was predicated on two contentions of

ineffective performance by petitioner's trial counsel and a contention that there was a conflict between

petitioner and his trial counsel due to the pendency of a lawsuit and a state bar complaint that petitioner

had filed against trial counsel.  The last reasoned rejection of this claim is the decision of the California

Court of Appeal for the Third Appellate District on petitioner's direct appeal.  See Lodged Documents

3 and 4.  The state court of appeal denied the claim as follows:

> On September 22, 2000, the jury found [petitioner] guilty and the trial court sustained the prior convictions.  After some delay regarding sentencing, on March 14, 2001, the court appointed new counsel to assist with a motion for a new trial.  That motion was filed nine months later, on December 12, 2001.  It consists of a two-page boilerplate recitation of the legal standards prepared by counsel, with [petitioner]'s handwritten complaints attached.  The People filed a declaration by [petitioner]'s trial counsel, who testified at the hearing; the motion was denied on March 27, 2002.

> Appellate counsel's mode of argument is to concede the dozen or more points raised by [petitioner]'s motion which were explicitly discussed at the new trial hearing, and argue that three minor points which were not directly addressed proved incompetent representation and should have compelled the trial court to grant the motion.  We agree with the Attorney General that [petitioner] has failed to support the claims with references to specific parts of the record.  Nonetheless we will address each point briefly.

> We conclude [petitioner] did not show the trial court abused its discretion in denying the motion for a new trial, because [petitioner] did not show either that counsel's actions fell below professional norms or that they caused prejudice.  Success on his claim depends on establishing both elements.  (*People v. Lewis* (2001) 25 Cal.4th 610, 674-675.)

> 1. [Petitioner] complains that trial counsel did not cross-examine Vicki about her attack on Johnny Lee Webb when she learned Webb had molested her daughter.  Supposedly, such a cross-examination would have undermined Vicki's credibility because it would have shown that she would not have allowed [petitioner] back in the house if he had really said that God had intended that he be allowed to molest victim.  [sic]  Her attack possibly resulted in a misdemeanor battery conviction.  Its admissibility for the purpose asserted is not certain.  It is difficult to second-guess an attorney's choices on impeachment and even if as a matter of law trial counsel should have tried to introduce this evidence, it would not have made a difference.  The fact Vicki kept [petitioner] in the household after his alleged comments about God and molestation spoke volumes and therefore counsel's election not to hammer on that point would not have changed anything.

2.  [Petitioner] contends the fact he filed a lawsuit against trial counsel (*after the verdicts*, not during trial) created an actual conflict because it would be to counsel's benefit to see him convicted, so [petitioner] could not show actual innocence, a necessary element of a legal malpractice cause of action based on a wrongful criminal conviction.  (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 545.)  But, as stated above, regarding the denial of the first *Marsden* motion, such a rule would allow any defendant to delay lawful proceedings by suing trial counsel (preferably as close to trial as possible, to maximize the delay) and forcing the court to appoint another attorney.  That is not the law.

[Petitioner] points to nothing in the record to support his suspicion that trial counsel somehow "threw" the case.  As we have recited in the facts, the conviction was supported by direct testimony of the victim and corroborated by [petitioner]'s conduct toward another young girl as well as by his statements to his wife about feeling a privilege from God to molest his stepdaughter.  While, of course, the jury may have rejected the People's evidence, there is nothing in the record which hints at any failing of trial counsel which contributed to the jury's decision to credit that evidence.  The trial court, who was in the best position to evaluate [petitioner]'s claims about the course of trial, did not abuse his discretion by denying the motion for a new trial on this ground.

3.  [Petitioner] contends trial counsel failed to make arguments about victim's mental state and child abuse accommodation syndrome testimony.  He claims trial counsel should have shown victim got good grades despite her claims of severe depression due to molestation by [petitioner], and (somewhat inconsistently) should have shown that her depression stemmed solely from the earlier molestations by Johnny Lee Webb.  He fails to develop these claims and we are not obliged to make the argument for him.  (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19.)  In any event, as for the former claim, the trial court could credit trial counsel's testimony that the school records did not support [petitioner]'s theory; as for the latter, the defense introduced expert testimony on the subject of false allegations of abuse, and we agree with the Attorney General that trial counsel could conclude this was the more effective way to attack the Child Abuse Accommodation Syndrome evidence then by exploring possible vestigial trauma from the abuse by Webb.

People v. Harris, slip op. at 11-14 (emphasis in original).

As noted above, petitioner's motion for new trial was predicated on two claims of ineffective assistance of counsel and one claim of actual conflict with his trial counsel.  In order to obtain relief based on ineffective assistance of counsel, petitioner must show two things, an unreasonable error

1   and prejudice flowing from that error.  First petitioner must show that, considering all the circumstances,

2   counsel's performance fell below an objective standard of reasonableness.  <u>Strickland v. Washington</u>,

3   466 U.S. 688 (1984).  The court must determine whether in light of all the circumstances, the identified

4   acts or omissions were outside the wide range of professional competent assistance.  <u>Id.</u> at 690.

5   "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's

6   conduct fell within the wide range of reasonable representation."  <u>United States v. Ferreira-Alameda</u>,

7   815 F.2d 1251 (9th Cir. 1986).

8          Second, petitioner must prove prejudice.  <u>Strickland</u> at 693.  To demonstrate

9   prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's

10  unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A

11  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>  The

12  focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the

13  trial unreliable or the proceeding fundamentally unfair."  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372

14  (1993).

15         After review of the record, this court finds that petitioner has failed to establish either

16  deficient performance by his counsel or the required prejudice.  Moreover, for the reasons set forth in

17  section IIA, <u>supra</u>, the alleged conflict with trial counsel did not entitle petitioner to new counsel.  <u>A</u>

18  <u>fortiori</u>, the trial court did not err in denying petitioner's motion for new trial. The state court's rejection

19  of this claim was neither contrary to nor an unreasonable application of clearly established federal law.

20  This claim should be denied.

21         C.  <u>Admission of Evidence/Failure to Object</u>

22  _____Petitioner's third claim for relief is that his constitutional rights were violated by the

23  improper admission of inflammatory character evidence and counsel's failure to object to admission of

24  the evidence.   The last reasoned rejection of this claim is the decision of the California Court of Appeal

25  for the Third Appellate District on petitioner's direct appeal.  <u>See</u> Lodged Documents 3 and 4.  The

26  state court of appeal denied the claim as follows:

Evidence was admitted that [petitioner] . . . drew pictures of a woman having sex with a dog and admitted he had done so for the purpose of self-therapy after witnessing such an event.  On appeal, [petitioner] asserts this evidence was irrelevant and inflammatory, that it was not evidence of sexual offenses admissible under Evidence Code section 1108, and argues that the prosecution introduced it solely to paint him as a sexual deviant.

[Petitioner] concedes he made no objection to any of the evidence at trial.  Therefore, we decline to address his claims of error.  (Evid. Code, § 353; *People v. Morris* (1991) 53 Cal.3d 152, 187-188.)

[Petitioner] contends counsel was incompetent and therefore his lack of objection should not bar his claims.

That an attorney permits objectionable testimony to enter the record does not itself prove incompetence.  At times otherwise inadmissible evidence may come out in another form, or the testimony may cut two ways.  (E.g., *People v. Raliff* (1986) 41 Cal.3d 675, 692; *In re Lower* (1979) 100 Cal.App.3d 144, 150.)  "Because the decision whether to object is inherently tactical, the failure to object to evidence will seldom establish incompetence."  (*People v. Freeman* (1994) 8 Cal.4th 450, 490-491; see *People v. Frierson* (1979) 25 Cal.3d 142, 158.)

. . . .

The evidence that [petitioner] drew a picture of a woman having sex with a dog was not relevant to the charged offenses.  However, compared with victim's testimony of what [petitioner] did to her, the bestiality evidence was not unduly inflammatory or unduly prejudicial.

Finally, none of this evidence was central to the People's case and, contrary to appellate counsel's view, was not the focus of closing arguments.  Therefore, [petitioner] has not shown prejudice, a necessary element of his claim of incompetent counsel.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.)

People v. Harris, slip op. at 14-16.[3]

Respondents contend that petitioner's challenge to admission of the evidence is claim is

barred by the doctrine of procedural default based on the state court's finding that petitioner did not

object to admission of the evidence at trial.  Respondents also contend that admission of the evidence

---

[3] On direct appeal, petitioner objected to admission of several other items of evidence in addition to the "bestiality evidence."  In the claim raised in the instant petition, petitioner cites only to pages in the record which refer to the latter evidence.  <u>See</u> Petition filed February 7, 2005, at 6 (citing Reporter's Transcript of Proceedings (RT) at 326-327, 536, 897, 936).

1  was not prejudicial and that petitioner's claim that his counsel was ineffective in failing to object to it is

2  without merit.

3             Absent a showing of "cause and prejudice or a fundamental miscarriage of justice,"

4  Park v. California, 202 F.3d 1146, 1150 (9th Cir. 200),

5             [a] federal court will not review questions of federal law decided by a
             state court if the decision also rests upon a state law ground that is
6             independent of the federal question and adequate to support the
             judgment. Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct.
7             2546, 115 L.Ed.2d 640 (1991). Although a state procedural rule is
             sufficient to foreclose review of a federal question, an inquiry into the
8             adequacy of such a rule to foreclose review "is itself a federal
             question." Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 13
9             L.Ed.2d 934 (1965). To be "adequate," the state procedural bar must
             be "clear, consistently applied, and well-established at the time of the
10            petitioner's purported default." Calderon v. U.S. Distri. Court, 96
             F.3d [1126] at 1129 [(9th Cir. 1996)].

11

12  Melendez v. Pliler, 288 F.3d 1120, 1124 (9th Cir. 2002). Under California's so-called

13  contemporaneous objection rule, set forth in California Evidence Code § 353, a jury verdict cannot be

14  set aside based on the improper admission of evidence "unless there is an objection, the grounds for the

15  objection are clearly expressed, and the objection is made at the time the evidence is introduced." Id.

16  at 1125. Where, as here, the rule is invoked by the state court where a party failed to make any

17  objection to admission of the challenged evidence, the rule is adequate to preclude federal review of a

18  claim challenging admission of the evidence. See Melendez, id. (citing Garrison v. McCarthy, 653 F.2d

19  374, 377 (9th Cir. 1981)). Moreover, for the reasons set forth infra, petitioner has not shown

20  prejudice from the default.

21             Petitioner also claims that his attorney was ineffective in failing to object to this

22  evidence. The evidence at issue was received through the testimony of petitioner's ex-wife, Vicki,

23  during questioning by the prosecutor, as follows:

24             Q. Was there any other incidents that occurred that were disturbing
             to you at that period?

25

26             A. Yes, there was. When I was packing up to move out of
             Magnolia, April brought some three-and-a-half, 3 by 5 cards, that she

1     had found in the desk that was of woman having sex with dogs.  After
she brought these cards to me, I went to my room and looked in some
2     of the other drawings that Dan had done, and there was more of them,
and I had asked Dan is that – you know, what was he thinking when he
3     drew these, if he had drawn them, and he said that he had drawn them,
that he walked in on some woman having sex with a dog, and it always
4     was bugging him, so he thought if he drew the pictures, that he would
forget about them.

5

6          Q.  Like did he say where he had walked in on this?

7          A.  Some motel there in Chico.

RT at 326-327.  Subsequently, during the testimony of Detective Duitsman, the following exchange
8
took place between the prosecutor and the witness:
9
          Q.  What did she [Vicki] indicate?
10
          A.  Well, I asked her why she separated from Mr. Harris at that
11     time in the past, and she talked to me about the drug abuse, of course.
Then she also told me about some drawing that she had found that.
12
          Q.  That depicted what?
13
          A.  Women having sex with dogs.
14
          Q.  And did she confront Mr. Harris about those drawings?
15
          A.  Yes.
16
          Q.  What did he indicate?
17
          A.  She told me that he had related to her that he had gone to a
18     motel on one occasion to visit a friend and had actually witnessed a
woman having sex with a dog.
19
          Q.  And one or about – did she indicate which motel or hotel he had
20     gone to?

21          A.  Yes.

22          Q.  What was that?

23          A.  The Matador.

24
RT at 536-537.  During closing argument, the prosecutor commented twice on this testimony:
25
          We have the pictures that he was drawing of the woman having sex
26     with dogs.  Then he actually went into a motel room to see this kind of

1    behavior.  That is a bit out of the norm, if you will.  You know, the kind
     of stuff you might see in the red light district of Amsterdam, but it is
2    pretty bizarre behavior.

3         . . . .

4         You know, it is kind of interesting on those various questions that
     the defendant denies having made to Vicki, who, by the way, does not
5    have any conviction for a felony, which you should take into
     consideration when you consider the credibility of witnesses.
6
          He admits the statement that she found pictures that he had drawn
7    of the dogs and of the sex between a woman and a dog.  He admits
     that, but he doesn't admit any of those other statements.  Do you think
8    that the reason that he might admit that statement is because possibly,
     and, see, he didn't know this when he was being interviewed, possibly,
9    see, those pictures might still have existed?  You know, that is
     something where we could catch him in a direct lie, so that was
10   admitted.  That is, those statements.

11   RT at 897, 936-937.

12        As discussed above, in order to show that counsel was ineffective in failing to object to

13   the foregoing testimony and argument, petitioner must show that the failures were unreasonable and

14   prejudicial.  See Strickland v. Washington, 466 U.S. at 690, 693.  As the state court of appeal found,

15   the evidence was not relevant to the charges against petitioner.  However, after review of the record

16   this court finds no reasonable probability that the outcome of petitioner's trial would have been different

17   even if counsel had objected to this testimony and it had been stricken.  The state court's findings that

18   "compared with victim's testimony of what [petitioner] did to her, the bestiality evidence was not unduly

19   inflammatory or unduly prejudicial" and that "none of this evidence was central to the People's case and

20   . . . was not the focus of closing arguments" are fully supported by the record.  The state court's

21   rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established

22   federal law.  The claim should be denied.

23        D.  Jury instruction on adoptive admissions

24        Petitioner's final claim is that his constitutional rights were violated by the trial court's

25   decision to instruct the jury on adoptive admissions.  The last reasoned rejection of this claim is the

26   decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.

1   <u>See</u> Lodged Documents 3 and 4.  The state court of appeal denied this claim as follows:

2

3           When [petitioner] had been accused of touching the friend during the sleepover, he had vigorously denied touching her at all and wanted to speak to the friend's mother immediately; later he claimed he mistook the friend for Vicki when he was drunk.  Vicki testified she thought [petitioner] asked for a police investigation, because he was so indignant.

4

5

6           Vicki testified she told [petitioner] that victim "had told her counselor that he had been molesting her and that he needed to pack his things and leave."  In contrast to the response to the prior allegation, this time "His response was, he asked me if I believed it, and I told him I didn't know what I believed at that time.  I was confused.  He just needed to pack his stuff and leave, and he responded with the fact that [victim] had turned into a monster.  [¶]  Q.  Did he deny it?  [¶]  A.  No, he did not."  [Petitioner] "started packing a few of his things, and as he was leaving the door, he gave me a hug and said we would get through it."

7

8

9

10

11 /////

12           On cross-examination, Vicki testified she did not interpret [petitioner]'s response as an admission, but also said she was confused at the time.

13

14           [Petitioner] did not dispute the particulars of Vicki's testimony.  He testified he asked Vicki if she believed victim's allegations and when she said she did not know, "I just turned, said okay, fine.  I packed my clothes.  [¶]  Q.  Were you actually kind of calm about the whole thing?  [¶]  A.  Yes, I was.  [¶]  Q. . . . How could you be calm?  [¶]  A.  I believed at that point in a couple of days when the investigation happened, that they would see it wasn't true."  He also testified he hoped the issue would go away.

15

16

17

18           The jury was instructed (CALJIC No. 2.71) that evidence of oral admissions should be viewed with caution.  The jury was also instructed with CALJIC No. 2.71.5:

19

20           "If you should find from the evidence that there was an occasion when the defendant (1) under conditions which reasonably afforded him the opportunity to reply; (2) failed to make a denial in the face of an accusation, expressed directly to him or in his presence, charging him with the crime for which this defendant now is on trial or tending to connect him with its commission; and (3) that he heard the accusation and understood its nature, then the circumstances of his silence and/or conduct on that occasion may be considered against him as indicating an admission that the accusation thus made was true.  Evidence of an accusatory statement is not received for the purpose of proving its truth, but

21

22

23

24

25

26

only as it supplies meaning to the silence and/or conduct of the accused in the face of it.  Unless you find that the defendant's silence and/or conduct at the time indicated and admission that the accusatory statement was true, you must entirely disregard the statement."

The prosecutor argues to the jury "you would think if there were allegations against you of child abuse, you would be up in arms, but this wasn't the response of Mr. Harris."  The defense argued it was reasonable for [petitioner] not to "jump up and down and say no," but instead treat the accusation as "another in the long line of the unexpected from [victim].  He figures in a day or two they would figure it is not true.  It will go away."

Where, as here, a defendant fails to object at trial to introduction of evidence of an adoptive admission, the issue may not be raised on appeal.  (1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 140(8), p. 851.)  [Petitioner] attempts to avoid this rule by couching his claim as an attack on the instruction, although he did not object to the instruction, either.  We find nothing wrong with the instruction, which may, but need not, be given when evidence of an adoptive admission is introduced.  (*People v. Carter* (2003) 30 Cal.4th 1166, 1198 [disapproving prior cases holding the instruction always had to be given when evidence of an adoptive admission had been introduced].)

[Petitioner] testified why he had not replied to the accusation.  The instruction properly allows *the jury* [sic] determine whether that "silence . . . indicated an admission that the accusatory statement was true," otherwise is must "entirely disregard the statement."  (CALJIC No. 2.71.5; see Evid. Code, § 1221; *People v. Edelbacher* (1989) 47 Cal.3d 983, 1010 ["it is sufficient that the evidence supports a reasonable inference that an accusatory statement was made under circumstances affording a fair opportunity to deny the accusation; whether defendant's conduct actually constituted an adoptive admission becomes a question for the jury"'.)

We reject [petitioner]'s claim of instructional error.

People v. Harris, slip op. at 16-19 (emphasis in original).

Respondents first contend that this claim is barred by the doctrine of procedural default based on the state court's finding that petitioner failed to object at trial to either the introduction of adoptive admission evidence or the jury instruction.  The gravamen of petitioner's argument here is that his statement that the victim "was a monster" was not an adoptive admission but was in fact an implicit denial and that the evidence was therefore insufficient to support an instruction on adoptive admissions. See Petition at 6; Traverse filed June 29, 2005, at 14.

17

1    A challenge to jury instructions does not generally state a federal constitutional claim.

2  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986)

3  (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.

4  1983).  Habeas corpus is unavailable for alleged error in the interpretation or application of state law.

5  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

6  Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  However, a "claim of error based upon a right

7  not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas

8  corpus relief where its impact so infects the entire trial that the resulting conviction violates the

9  defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg

10 v. Crist, 616 F.2d 1107 (9th Cir. 1980), cert. denied, 449 U.S. 922 (1980)); see also Lisenba v.

11 California, 314 U.S. 219, 236 (1941).

12    In order to warrant federal habeas relief, a challenged jury instruction "cannot be

13 merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

14 right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (9th Cir.

15 1988), cert. denied, 488 U.S. 861 (1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).

16 To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the

17 resulting conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting

18 Cupp, 414 U.S. at 147).  In making its determination, this court must evaluate the challenged jury

19 instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'"

20 Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984), cert. denied,

21 469 U.S. 838 (1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire

22 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way'

23 that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370,

24 380 (1990)).

25    After review of the record, this court finds that petitioner's right to due process was not

26 violated by the adoptive admission instruction.  The instruction was not based solely on petitioner's

18

1  statement to his ex-wife that the victim "had turned into a monster."  Petitioner testified that when Vicki

2  told him about the victim's allegations he neither admitted nor denied them.  RT at 682.  The state

3  court's rejection of this claim was neither contrary to nor an unreasonable application of clearly

4  established federal law.  This claim should be denied.

5          For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

6  application for a writ of habeas corpus be denied.

7  /////

8          These findings and recommendations are submitted to the United States District Judge

9  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after

10  being served with these findings and recommendations, any party may file written objections with the

11  court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

12  Judge's Findings and Recommendations."  The parties are advised that failure to file objections within

13  the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

14  1153 (9th Cir. 1991).

15  DATED: August 24, 2009.

16

17                                    UNITED STATES MAGISTRATE JUDGE

18

19  harr0242.157

20

21

22

23

24

25

26